COOLEY LLP
REUBEN H. CHEN (228725)
(rchen@cooley.com)
ALEXANDRA DUNWORTH LEEPER (307310)
(aleeper@cooley.com)
ANGELA R. MADRIGAL (346530)
(amadrigal@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:     (650) 843-5000
Facsimile:     (650) 849-7400

*Attorneys for Defendant*
*ELEMENTARY ROBOTICS, INC.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> ELEMENTARY ROBOTICS, INC., <br><br> Defendant. | Case No. 2:25-cv-08297-HDV-E <br><br> **DEFENDANT ELEMENTARY ROBOTICS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS** <br><br> Judge:     Hon. Hernán D. Vera <br> Courtroom: 5B <br> Date:     February 5, 2026 <br> Time:     10:00 a.m. PT |

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND .................................................................................................... 1

II.     THE COMPLAINT DOES NOT SATISFY *TWOMBLY-IQBAL* .................................... 3

    A.      Legal Standard .......................................................................................... 3

    B.      The Complaint Fails to Sufficiently Plead Infringement ........................ 3

    C.      AIIA Does Not Plausibly Allege Pre-Suit Knowledge Required for Its Claims of Indirect and Willful Infringement .......................................... 6

III.    THE '272 AND '693 PATENTS ARE INVALID UNDER 35 U.S.C. § 101 .................. 7

    A.      Legal Standard .......................................................................................... 7

    B.      The Claims of the '272 Patent Are Invalid Under § 101 ........................ 8

        1.      Claim 17 is representative ............................................................. 9

        2.      *Alice* Step One: the claims are directed to an abstract idea ........ 9

            a.      The claims are directed to storing and creating image data .......... 10

            b.      The claims are not directed to specific improvements to technical problems ................................................................ 12

        3.      *Alice* Step Two: the claims recite no inventive concept ........... 13

    C.      The Claims of the '693 Patent Are Invalid Under § 101 ...................... 15

        1.      Claim 11 is representative ........................................................... 15

        2.      *Alice* Step One: the claims are directed to an abstract idea ...... 15

            a.      The claims are directed to collecting, storing, manipulating, and displaying information ........................................... 15

            b.      The claims are not directed to specific technical improvements, but use computers as tools to apply abstract ideas ............................................................................ 16

        3.      *Alice* Step Two: the claims recite no inventive concept ........... 17

IV.     CONCLUSION ................................................................................................... 19

CERTIFICATE OF COMPLIANCE ................................................................................... 19

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. DIRECTV,*
    838 F.3d 1253 (Fed. Cir. 2016).............................................................................. 16

*AI Visualize v. Nuance Commc'ns,*
    97 F.4th 1371 (Fed. Cir. 2024)....................................................................... *passim*

*Alice Corp. Pty. v. CLS Bank Int'l,*
    573 U.S. 208 (2014)......................................................................................... *passim*

*Anderson v. Kimberly-Clark,*
    570 F. App'x 927 (Fed. Cir. 2014) ....................................................................... 3, 6

*Apple v. Ameranth,*
    842 F.3d 1229 (Fed. Cir. 2016)............................................................................. 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................. 3

*Bell Atl. v. Twombly,*
    550 U.S. 544 (2007)............................................................................................ 3, 6

*Berkheimer v. HP,*
    881 F.3d 1360 (Fed. Cir. 2018)............................................................................ 12

*Bluebonnet Internet Media Servs. v. Pandora Media,*
    No. 2022-2215, 2024 WL 1338940 (Fed. Cir. Mar. 29, 2024)................................. 3

*Bot M8 v. Sony Corp. of Am.,*
    4 F.4th 1342 (Fed. Cir. 2021)................................................................................. 5

*BSG Tech. v. Buyseasons,*
    899 F.3d 1281 (Fed. Cir. 2018)............................................................................ 13

*Buckler v. Fox,*
    No. 8:25-cv-00095-JWH-JDEx, Dkt. 45 (C.D. Cal. Aug. 4, 2025)......................... 6

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

-ii-

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*CardioNet v. InfoBionic*,

No. 2020-2123, 2021 WL 5024388 (Fed. Cir. Oct. 29, 2021)................................................. 15

*Coffelt v. NVIDIA*,

680 F. App'x 1010 (Fed. Cir. 2017) ........................................................................ 11

*Content Extraction & Transmission v. Wells Fargo Bank, N.A.*,

776 F.3d 1343 (Fed. Cir. 2014)................................................................................. 9

*Credit Acceptance v. Westlake Servs.*,

859 F.3d 1044 (Fed. Cir. 2017) ............................................................................... 12

*Digitech Image Techs. v. Elecs. for Imaging*,

758 F.3d 1344 (Fed. Cir. 2014)....................................................................... 16, 17

*DKR Consulting v. Shopify*,

No. 2:23-CV-06904-HDV-JCx, 2024 WL 4005150 (C.D. Cal. Aug. 1, 2024) ................... 8, 9

*DRG-Int'l v. Bachem Americas*,

No. CV-15-7276-MWF, 2016 WL 3460791 (C.D. Cal. Jan. 5, 2016) .................................... 6

*E-Vision Optics v. Luxottica Grp. S.p.A.*,

No. SA CV 23-02013-AB, 2024 WL 1601853 (C.D. Cal. Mar. 8, 2024) ............................... 6

*Elec. Commc'n Techs. v. ShoppersChoice.com*,

958 F.3d 1178 (Fed. Cir. 2020)............................................................................... 16

*Elec. Power Grp. v. Alstom S.A.*,

830 F.3d 1350 (Fed. Cir. 2016)......................................................................... 12, 16

*EMM Innovations v. Remind101*,

No. 2:24-CV-10014-HDV-MAR, 2025 WL 2096473 (C.D. Cal. June 24, 2025)................... 8

*Finjan v. Blue Coat Sys.*,

879 F.3d 1299 (Fed. Cir. 2018)............................................................................... 16

*Free Stream Media v. Alphonso*,

996 F.3d 1355 (Fed. Cir. 2021)............................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- iii -

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Genetic Techs. v. Merial,*
818 F.3d 1369 (Fed. Cir. 2016)................................................................................................. 7

*In re Gilead Scis. Sec. Litig.,*
536 F.3d 1049 (9th Cir. 2008)............................................................................................... 3, 6

*Hawk Tech. Sys. v. Castle Retail,*
60 F. 4th 1349 (Fed. Cir. 2023)................................................................................... 10, 11, 12

*Illumina v. BGI Genomics,*
No. 19-CV-03770-WHO, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020).................................... 7

*Int'l Bus. Machines v. Zillow Grp.,*
50 F.4th 1371 (Fed. Cir. 2022)......................................................................................... *passim*

*Int'l Bus. Machines v. Zillow Grp.,*
No. 2022-1861, 2024 WL 89642 (Fed. Cir. Jan. 9, 2024) ..................................................... 15

*Intell. Ventures I v. Cap. One Fin.,*
850 F.3d 1332 (Fed. Cir. 2017)............................................................................................... 16

*Interval Licensing v. AOL,*
896 F.3d 1335 (Fed. Cir. 2018)............................................................................................... 17

*In re Killian,*
45 F.4th 1373 (Fed. Cir. 2022)............................................................................................... 18

*Koninklijke KPN N.V. v. Gemalto M2M GmbH,*
942 F.3d 1143 (Fed. Cir. 2019)............................................................................................... 13

*Litebook v. Verilux,*
No. SACV 22-01124-CJC, 2023 WL 2733463 (C.D. Cal. Feb. 7, 2023)................................ 7

*Longitude Licensing v. Apple,*
No. C-14-04275-EDL, 2015 WL 1143071 (N.D. Cal. Mar. 13, 2015)............................... 7, 11

*Mobile Acuity v. Blippar,*
110 F.4th 1280 (Fed. Cir. 2024).............................................................................................. 16

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- iv -

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Recentive Analytics v. Fox*,
134 F.4th 1205 (Fed. Cir. 2025)..................................................................... 9, 12, 13

*RecogniCorp v. Nintendo*,
855 F.3d 1322 (Fed. Cir. 2017)........................................................................ 11, 17

*SAP Am. v. InvestPic*,
898 F.3d 1161 (Fed. Cir. 2018)............................................................................... 16

*Silver State Intell. Techs. v. Facebook*,
314 F.Supp.3d 1041 (N.D. Cal. 2018) ..................................................................... 8

*Sonos v. Google*,
591 F.Supp.3d 638 (N.D. Cal. 2022) ....................................................................... 6

*State Indus. v. A.O. Smith*,
751 F.2d 1226 (Fed. Cir. 1985).................................................................................. 6

*Synopsys v. Mentor Graphics*,
839 F.3d 1138 (Fed. Cir. 2016)................................................................................ 13

*Two-Way Media v. Comcast Cable Comm'ns*,
874 F.3d 1329 (Fed. Cir. 2017)................................................................................ 17

*Ultramercial v. Hulu*,
772 F.3d 709 (Fed. Cir. 2014)............................................................................... 9, 16

*Univ. of Fla. Rsch. Found. v. Gen. Elec.*,
916 F.3d 1363 (Fed. Cir. 2019)........................................................................... 12, 16

*Weisner v. Google*,
51 F.4th 1073 (Fed. Cir. 2022)................................................................................... 8

*Yu v. Apple*,
1 F.4th 1040 (Fed. Cir. 2021)................................................................................... 18

**Statutes**

35 U.S.C. § 101 ....................................................................................................... *passim*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- v -

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 3, 7

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

- vi -

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

Even after amending, Plaintiff Artificial Intelligence Industry Association, Inc. ("Plaintiff" or "AIIA") falls far short of the pleading standard, recites blatant inaccuracies, and asserts patents claiming ineligible subject matter. AIIA's infringement allegations fail the *Twombly-Iqbal* standard: AIIA repeatedly makes up claim language that does not exist and ignores the actual claim language. *Nowhere* does AIIA accurately and plausibly align even one claim to the features of the accused products. AIIA's speculative allegations of pre-suit knowledge are inadequate to allege indirect and willful infringement. Furthermore, two of the asserted patents, the '693 and '272 patents, are directed to ineligible subject matter under 35 U.S.C. § 101. The '693 patent is directed to abstract data management, while the '272 patent is directed to abstract image storage and creation. Both are analogous to claims repeatedly found ineligible by the Federal Circuit.

Elementary Robotics ("Elementary") placed AIIA on notice of these deficiencies before AIIA filed its amended complaint, but AIIA failed to cure them. Instead, AIIA refiled an amended complaint that amplified the blatant pleading flaws. AIIA has already had a chance to fix its complaint, and it could not. The Court should dismiss AIIA's amended complaint with prejudice.

## I.    BACKGROUND

AIIA filed suit on September 3, 2025, accusing Elementary's VisionStream of infringing AIIA's patents. (Dkt. 1.) Counsel for Elementary requested a meet and confer and included a letter and draft motion to dismiss that outlined the complaint's many deficiencies—including inadequate pleading, assertion of invalid patents, and various misrepresentations throughout (including mischaracterizations and inaccurate quotations of its own claims). (*See* Ex. 1[1].) Despite receiving ample notice of the complaint's deficiencies, on November 20, 2025, AIIA filed a more problematic amended complaint (Dkt. 16) (the "FAC").

AIIA's FAC purports to accuse Elementary of infringing at least claims 1 and 7 of U.S. Patent No. 9,930,315 (the "'315 patent"); claims 1 and 11 of U.S. Patent No. 10,075,693 (the "'693 patent"); and claims 1 and 17 of U.S. Patent No. 11,257,272 (the "'272 patent") (collectively, the

---

[1] Unless otherwise noted, all exhibits are to the Declaration of Alexandra Leeper in Support of Defendant's Motion to Dismiss ("Leeper Decl."), filed herewith.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

1

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

"asserted patents" and "asserted claims").[2] The asserted patents are generally related to "Stereoscopic 3D Video with Embedded Calibration" ('315 patent), "Metadata-Embedded Stereoscopic Video Systems" ('693 patent), and "Synthetic Image Generation for Machine Learning" ('272 patent). (*See* FAC at pp. 6, 7, 9.)

AIIA's original complaint had numerous inaccuracies about these patents; AIIA's FAC has more. Most fatally, the FAC misquotes and/or inaccurately paraphrases the material substance of nearly every asserted "claim" in the FAC and the attached "claim" charts. (*See*, *e.g.*, FAC ¶¶ 13 (incorrect issue date, incorrect title), 15 (same), 20-21 (inaccurate quotations of the '315 claims), 24-25 (inaccurate quotations of the '693 claims), 29-30 (inaccurate quotations of the '272 claims), 37-43 (inaccurate quotations of the '315 claims), 53 (inaccurate quotations of the '272 claims); FAC, Ex. D (inaccurate claim language).) *Not a single asserted "claim" is reproduced correctly in either the FAC or the attached charts.*

The FAC also alleges willful and indirect infringement. AIIA speculates that Elementary knew of AIIA's asserted patents, allegedly "through [Elementary's] participation in the computer vision and industrial AI industries, monitoring of patent publications in its field, and engagement with the machine learning and 3D imaging communities." (FAC ¶ 3; *see also id.* ¶¶ 44, 48, 54, 57, 59). AIIA's allegations of knowledge focus on Elementary's participation in "industry conferences" during which "*technologies related to* the Patents-in-Suit are frequently discussed," as well as Elementary's employment of "experts" who "would be familiar with *relevant patents* in these fields." (*Id.* ¶ 57 (emphasis added).) AIIA also states that Elementary's "development and marketing of products with features" that AIIA alleges infringe "demonstrates knowledge of and willful infringement of" the asserted claims, based merely on the "issuance" of the patents rather than any allegations of actual knowledge. (*Id.* ¶¶ 48, 54.) In an introductory paragraph, AIIA mentions 2025 correspondence with Elementary, although it is unclear whether AIIA alleges this as a basis for knowledge. (*Id.* ¶ 3.) That letter "offer[ed] membership"/ "invit[es] for [Elementary]

---

[2] The body of the FAC identifies only these claims. However, the infringement claim charts in Ex. D to the FAC do not include all of these claims and purport to identify additional claims: claims 2-3 of the '272 patent, claims 6-7 of the '315 patent, and claims 6 and 12 of the '693 patent. Almost none of the language in the FAC or Exhibit D matches any actual claim language.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

to join the AIIA" because it "appears that [Elementary] is utilizing technologies and workflows that fall within the scope of [AIIA's general] [] patent portfolio," while at the same time warning that "[t]he enrollment of other companies in [the] market sector may prevent [AIIA] from accepting [Elementary] as a member." (*Id.*, Ex. E.) The correspondence does not mention alleged infringement. (*Id.*)

## II.    THE COMPLAINT DOES NOT SATISFY *TWOMBLY-IQBAL*

AIIA fails to adequately plead direct, indirect, and willful infringement.

### A.    Legal Standard

To survive a motion under Rule 12(b)(6), a claim "requires more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Bell Atl. v. Twombly*, 550 U.S. 544, 545-55 (2007). The plaintiff must include sufficient factual allegations to state a claim to relief that is above a speculative level and plausible on its face. *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows that court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing a motion to dismiss for failure to state a claim, the court need not accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Anderson v. Kimberly-Clark*, 570 F. App'x 927, 931-32 (Fed. Cir. 2014); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Likewise, the court need not accept allegations that are contradicted by the language of the asserted patents. *Bluebonnet Internet Media Servs. v. Pandora Media*, No. 2022-2215, 2024 WL 1338940, at *2 (Fed. Cir. Mar. 29, 2024) (courts "not required to accept as true allegations … that are conclusory, state legal conclusions, or contradict the patent itself"); *accord AI Visualize v. Nuance Commc'ns*, 97 F.4th 1371, 1380 (Fed. Cir. 2024).

### B.    The Complaint Fails to Sufficiently Plead Infringement

The FAC should be dismissed in its entirety. AIIA does not accurately and plausibly allege direct infringement for any asserted claim.

Throughout the FAC, AIIA repeatedly misquotes and inaccurately paraphrases its own claims. (*Compare*, *e.g.*, FAC ¶¶ 20-21, 24-25, 29-30, 37-43, and Ex. D *with* FAC, Exs. A-C ('272,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

'693, and '315 patents).) The FAC *does not accurately recite any asserted claim*, neither in the body of the FAC nor in its supposed "infringement charts" in Exhibit D. This is shown in Exhibit 2, attached here, which compares AIIA's supposedly quoted claim language to the actual claim language. To highlight just a few examples:

- The FAC recites two different incorrect versions of '315 patent claim 7: in one case the FAC recites an incorrect system claim and in another incorrectly recites a dependent claim. (*See* Ex. 2 at pp. 40-43.) Claim 7 is actually an independent method claim, whose language resembles neither "quoted" version in the FAC.

- In the version of '693 patent claim 1 provided in Exhibit D of the FAC, AIIA omits nearly the entirety of the claim, leaving behind the gibberish limitation "a computer processor … programmed to: obtain… embedding… calibration metadata… encoding … subtitles… timing…" (*See id.* at p. 43.)

- For each of '693 patent claim 12 and '272 patent claims 2 and 3, AIIA invents a new preamble, then entirely omits the substantive limitations of the claim. (*See id.* at pp. 47, 50-51.)

- The FAC repeatedly intersperses phrases that do not actually appear *anywhere* in *any* of the asserted patents. (*See e.g.*, FAC ¶¶ 20, 39 ("contemporaneously embedding"); 24-25 ("motion vectors"); 29, 53 ("annotation data").)

AIIA cannot plausibly allege infringement of its asserted claims where it does not even accurately represent its own claim language. Again, AIIA has not accurately represented even one asserted claim, let alone presented any coherent, plausible allegation of infringement. And even if AIIA quoted the corrected language, the FAC lacks sufficient allegations to plausibly plead infringement of any claim. To highlight a few of the *many* substantive deficiencies:

- Every claim of the '315 patent requires "inertial measurement data" as well as either "combining multiple stereoscopic video sequences recorded by multiple stereoscopic recording devices" or performing "a comparison of a portion of the video frames to other frames in the stereoscopic 3D video sequence." (FAC, Ex. C) The FAC and its Exhibit D omit these limitations entirely, contain no allegations that Elementary uses inertial

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

4

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

measurement data, no allegations that Elementary ever combines multiple video sequences, and no allegations that Elementary compares a portion of video frames to other frames.

- Every claim of the '693 patent requires using metadata stored in the "subtitle" or "closed captioning" fields of a video. (FAC, Ex. B.) Neither the FAC nor its Exhibit D have any allegations that any Elementary product uses either subtitle or closed captioning fields, for metadata or any other purpose.

- Every claim of the '272 patent requires use of "3D models," "a library of texture materials," and a database of "background images." (FAC, Ex. A.) Every claim further requires "selecting a background image from the database of background images," and "covering the 3D model with a texture material" selected from the "library of texture materials." (*Id.*) Neither the FAC nor its Exhibit D have any allegations that Elementary ever selects a background image from the database of background images. And neither have any allegations that Elementary ever covers a 3D model with a texture material. In fact, the FAC's only allegation that Elementary uses "background images," "3D models," or "texture materials" in *any* capacity is to parrot the language of the '272 patent and then point (without citation) to Elementary supposedly using "diverse production parts" and "storing representations of production parts, manufacturing environment elements, and camera configurations that are used to generate 'infinite variations' and 'simulate real-world defects.'" (FAC ¶¶ 52, 53.) These allegations lack citation, and do not plausibly allege use of background images, nor a library of texture materials, nor 3D models, let alone the specific use required by the patent. *Bot M8 v. Sony Corp. of Am.*, 4 F.4th 1342, 1355 (Fed. Cir. 2021) ("mere recitation of claim elements and corresponding conclusions, without supporting factual allegations" is insufficient to meet a plaintiff's pleading burden).

Compounding the problem, counsel has not been able to decipher the source of many of the "quotes" and other allegations in the FAC. AIIA refers vaguely to "ElementaryML Blog" and general "marketing materials" on Elementary's website without saying which blog post or marketing materials supposedly have language AIIA quotes. AIIA also cites third-party sources, such as PRNewswire and Engineering.com, without providing any specific URLs. (*See*, *e.g.*, FAC

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

¶ 34 and Ex. D.)[3]

These numerous misrepresentations, misquotes, and missing infringement allegations all amount to an FAC that does not plausibly allege infringement. *See Twombly*, 550 U.S. at 570; *Anderson*, 570 F. App'x at 931-32; *Gilead*, 536 F.3d at 1055.

Amendment would be futile. This is the second time that Elementary has expended considerable resources to attempt to make sense of incoherent allegations in AIIA's error-filled and deficient complaints. Elementary already notified AIIA of its misrepresentations and insufficient pleading in the original complaint. AIIA's amendment not only failed to cure the issues, but instead added even more blatant inaccuracies. Meanwhile, AIIA has been using pendency of this flawed action to harass Elementary's customers with error-riddled threat letters (Leeper Decl., ¶ 6), causing ongoing harm to Elementary's business relationships. AIIA has already demonstrated an inability to cure its pleading, and the FAC should be dismissed with prejudice. *E.g.,* Ex. 3, *Buckler v. Fox*, No. 8:25-cv-00095-JWH-JDEx, Dkt. 45 (C.D. Cal. Aug. 4, 2025) (dismissing amended complaint with prejudice because plaintiff failed to cure deficiencies after receiving leave to amend).

### C.    AIIA Does Not Plausibly Allege Pre-Suit Knowledge Required for Its Claims of Indirect and Willful Infringement

AIIA's indirect and willful infringement claims should be dismissed for the additional reason that the FAC fails to plausibly allege pre-suit knowledge of the asserted patents, let alone pre-suit knowledge of infringement. Inducement, contributory infringement, and willful infringement all require that defendant had knowledge of the asserted patent *and* of patent infringement. *State Indus. v. A.O. Smith*, 751 F.2d 1226, 1236 (Fed. Cir. 1985); *DRG-Int'l v. Bachem Americas*, No. CV-15-7276-MWF (SSx), 2016 WL 3460791, at *2, *9 (C.D. Cal. Jan. 5, 2016); *Sonos v. Google*, 591 F.Supp.3d 638, 644 (N.D. Cal. 2022). For claims to survive a 12(b)(6) motion, pre-suit knowledge must be adequately pled. *See E-Vision Optics v. Luxottica Grp. S.p.A.*, No. SA CV 23-02013-AB (SHKx), 2024 WL 1601853, at *5 (C.D. Cal. Mar. 8, 2024). Plaintiff "must provide factual matter to support the conclusion that [defendant] had knowledge of the

---

[3] Many of the "quotes" turn up no results on a Google search. For example, AIIA twice attributes the phrase "dual PoE camera support" to Elementary, but the only search results for this quoted phrase are a non-Elementary AliExpress.com listing for a cable splitter, and an AI-generated summary of AIIA's FAC.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

patents-in-suit,' not just the 'bare allegation of actual knowledge.'" *See Litebook v. Verilux*, No. SACV 22-01124-CJC (JDEx), 2023 WL 2733463, at *4 (C.D. Cal. Feb. 7, 2023).

AIIA's allegations regarding pre-suit knowledge in this case are inadequate and speculative. Elementary did not receive any pre-suit notice of any alleged infringement. The June 2025 letter that AIIA briefly mentions (FAC ¶ 3) alleges only that it "appears that [Elementary] is utilizing technologies and workflows that fall within the scope of [AIIA's] protected patent portfolio" without specifying which patent is potentially at issue. (*Id.*, Ex. E.) In that letter, AIIA "offer[s] membership"/ "invit[es] for [Elementary] to join the AIIA" *while at the same time* warning Elementary that "[t]he enrollment of other companies in [the] market sector may prevent [AIIA] from accepting [Elementary] as a member of the Association." (*Id.*) This does not provide the requisite notice of alleged infringement. AIIA tacitly acknowledges this by mentioning the letter only once, in an introductory paragraph of the FAC, and then pivoting in the rest of the FAC to a different flawed theory of pre-suit knowledge.

In its second theory, AIIA speculates that Elementary learned of AIIA's patents through AIIA's general business activities (*see* FAC ¶¶ 3, 44, 48, 54, 57, 59)—asserting that merely developing and marketing its products is evidence of knowledge and willful infringement of the asserted claims (*id.* ¶¶ 48, 54). Such allegations are insufficient. *Illumina v. BGI Genomics*, No. 19-CV-03770-WHO, 2020 WL 571030, at *6 (N.D. Cal. Feb. 5, 2020) ("[M]erely stating that [party] regularly monitors [IP] in fields related to its products will not suffice to state a claim of knowledge for the purposes of willful or induced infringement."); *see also Longitude Licensing v. Apple*, No. C-14-04275-EDL, 2015 WL 1143071, at *3 (N.D. Cal. Mar. 13, 2015). AIIA has not properly pled pre-suit knowledge, so its claims of indirect and willful infringement should be dismissed.

## III.    THE '272 AND '693 PATENTS ARE INVALID UNDER 35 U.S.C. § 101

Not only has AIIA failed to plausibly plead infringement, but the claims of the '272 and '693 patents are ineligible under *Alice*.

### A.    Legal Standard

Patent eligibility under 35 U.S.C. § 101 is a question of law and can be resolved on a Rule 12(b)(6) motion before claim construction. *See, e.g., Genetic Techs. v. Merial*, 818 F.3d 1369,

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

1373-74 (Fed. Cir. 2016); *Weisner v. Google*, 51 F.4th 1073, 1087 (Fed. Cir. 2022); *EMM Innovations v. Remind101*, No. 2:24-CV-10014-HDV-MAR, 2025 WL 2096473, at *6 (C.D. Cal. June 24, 2025) (Vera, J.); *DKR Consulting v. Shopify*, No. 2:23-CV-06904-HDV-JCx, 2024 WL 4005150, at *4-5 (C.D. Cal. Aug. 1, 2024) (Vera, J.).

The Supreme Court's two-step *Alice* framework governs the § 101 inquiry. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). *Alice* Step One involves determining whether the claims at issue are directed to a patent-ineligible concept, such as an abstract idea. *Id*. There is no bright-line test for this step, and courts utilize a variety of techniques to address the inquiry. *See Silver State Intell. Techs. v. Facebook*, 314 F.Supp.3d 1041, 1046 (N.D. Cal. 2018). For example, to determine whether claims are abstract, courts compare the claims at issue to those previously found to be abstract. *Id*. Courts also consider whether the claims are directed to mental processes or processes that could be done with pen and paper. *Id*. Courts may consider whether the claims have an analogy in the non-computer context, such that they cover a fundamental, long-prevalent practice. *See Alice*, 573 U.S. at 219. Courts also look to whether the claims "purport to improve the functioning of the computer itself"; applying an abstract idea using some generic computer "is not '*enough*' to transform [the] abstract idea into a patent-eligible invention." *See id*. at 225-26.

If the claims are directed to an abstract idea, the court then determines whether claim elements, both individually and as an ordered combination, constitute an inventive concept sufficient to transform the nature of the claim into a patent-eligible application. *Id*. at 217. "Such transformation, however, requires more than just the recitation of the abstract idea followed by the words 'apply it,'" and simply adding a generic computer to an otherwise abstract concept cannot save the patent from ineligibility. Rather, to satisfy the inventive concept requirement at *Alice* Step Two, an invention must "'involve more than performance of well-underst[ood], routine, [and] conventional activities previously known to the industry.'" *EMM Innovations*, 2025 WL 2096473, at *7.

**B.    The Claims of the '272 Patent Are Invalid Under § 101**

The '272 patent is directed to unpatentable subject matter.

Cooley LLP
Attorneys at Law
Palo Alto

8

Defendant's MPA ISO
Motion to Dismiss
Case No. 2:25-cv-08297-HDV-E

### 1.    Claim 17 is representative

AIIA identifies claims 1 and 17 of the '272 patent in its FAC (¶ 50); both claims recite a "method for generating [] synthetic image data" and are substantially similar (*see* FAC, Ex. A at cls. 1, 17). In fact, almost all of the claim language recited in claim 1 is also recited in claim 17. The additional claim 1 limitations not recited in claim 17 reflect only minor differences that do not change the basic process required by both claims. Thus, claim 17 may serve as representative. *See DKR Consulting*, 2024 WL 4005150 (claims containing only minor differences but requiring performance of the same basic process should rise or fall together), at *5; *accord Ultramercial v. Hulu*, 772 F.3d 709, 714 (Fed. Cir. 2014); *Content Extraction & Transmission v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

Claim 17 is also representative of the unasserted claims (cls. 2-16, 18)—all but one of which are dependent and all of which include only minor variations or particularities which are all abstract and conventional, such as the addition of a second "virtual camera" to capture synthetic image data (still just generating image data) (independent cl. 13), specification of so-called "camera capture settings" for the virtual camera (cls. 12, 15, 16), variation in types of image data to be collected (cls. 3, 9, 10, 11, 14), specification of features of the image data (cls. 2 ("realistic representation"), 4 ("3D background"), 18 (listing image scene classes, e.g., "landscape scene")), organization of image data (cl. 8), and finally modification and processing of image data (cls. 5, 6, 7).

### 2.    *Alice* Step One: the claims are directed to an abstract idea

The claims of the '272 patent are directed to the abstract idea of storing and creating images and image data. Representative claim 17 generally recites a method for generating synthetic image data using standard image and camera components (background images, 3D models, texture materials, scene metadata, and camera setting files; basic processors and a computer graphics engine) and then using a training dataset of the images to train a machine learning system. (FAC, Ex. A at cl. 17.) The Federal Circuit has repeatedly found similar claims abstract and has recently clarified that such bare-bones recitation of machine learning as a tool cannot save claims from abstraction. *See*, *e.g.*, *AI Visualize v. Nuance Commc'ns*, 97 F.4th 1371 (Fed. Cir. 2024) (claims directed toward storing and creating virtual images/views to be patent ineligible); *Recentive*

Cooley LLP
Attorneys at Law
Palo Alto

9

Defendant's MPA ISO
Motion to Dismiss
Case No. 2:25-cv-08297-HDV-E

*Analytics v. Fox*, 134 F.4th 1205 (Fed. Cir. 2025) (claims relying on generic machine learning to carry out generation of schedules and network maps to be patent ineligible).

### a.    The claims are directed to storing and creating image data

Claim 17 is directed toward nothing more than storing image data and then putting together that image data to generate other images. This abstract practice is analogous to long-standing human activity, including arts-and-crafts, such as scrapbooking, where different images, objects, textures, etc. can be combined to generate an image on the page. As another analogy, certain photoshoots involve choosing different textured clothing for the model, placing them in front of different backgrounds, taking photos at different angles, and editing/combining photos for display. The '272 patent itself acknowledges "[c]onventional methods of aggregating image datasets" such as by "rely[ing] on manual steps performed by a photographer." (FAC, Ex. A at 4:23-24, 5:50-54.)

The Federal Circuit routinely finds similar claims abstract. In *AI Visualize*, the Federal Circuit found ineligible claims that taught systems and methods "for receiving, storing, processing and viewing large medical scans" that allowed "users to review three-dimensional (or higher dimension) 'virtual views' of a VVD [volume visualization dataset] on a computer connected to the internet without having to transmit or locally store the entire VVD." 97 F.4th at 1375. Just like the '272 patent, the patent claims in *AI Visualize* stored image data in a database, which were then processed to create virtual images ("virtual views"). *Id.* The Federal Circuit described the claims in *AI Visualize* as involving the steps of: "*storing* data (VVD) on a server, *accepting* user requests to view a portion of that data (virtual views), *checking* for the location of all data needed for the virtual view, '*creating*' image frames from any non-locally-stored virtual view data, *transmitting* all non-locally-stored image frames to the user, *compiling* all image frames, and sequentially *displaying* the image frames to the user." *Id.* at 1378. The Federal Circuit explained that these steps were nothing more than the abstract idea of "converting data and using computers to collect, manipulate, and display the data." *Id.*; *see also id.* at 1380 ("[T]he claimed step of creating a virtual view is itself an abstract idea."). So too here.

Likewise, *Hawk Tech. Sys. v. Castle Retail* involved claims that, like the '272 patent, received images, displayed one or more images simultaneously, converted the images into a

Cooley LLP
Attorneys at Law
Palo Alto

10

Defendant's MPA ISO
Motion to Dismiss
Case No. 2:25-cv-08297-HDV-E

selected format, stored a subset of converted images, received a request to receive specific streams of images, transmitted images, and displayed requested streams. 60 F.4th 1349, 1357 (Fed. Cir. 2023). The Federal Circuit found these claims abstract and patent ineligible, despite patentee's argument that the system solved a technical problem.

In *Longitude Licensing v. Google*, the Federal Circuit found four patents directed to performing digital image correction techniques on a computer were "drawn to the abstract idea of 'improving image quality by adjusting various aspects of an image based on features of the main object in the image'"—which was just the abstract idea of "organiz[ing], alter[ing], or manipulat[ing] data." No. 2024-1202, 2025 WL 1249136, at *1-2 (Fed. Cir. Apr. 30, 2025). The Federal Circuit rejected arguments that the asserted claims were directed to a "distinct" and "improved" digital image processing technique. *Id.* at *3, 4. Although the claim purportedly identified the technical improvement of more efficiently locating the subject of an image, the claim did not explain how the process was achieved and was written in functional terms that carry out basic data collection and manipulation. *Id.* at *4. The concept identified by patentees was "the same abstract idea [] identified at step one" and, thus, not inventive. *Id.* at *5.

Numerous other cases confirm that claims for image creation, storage, organization, and manipulation like those of the '272 patent are abstract. *See*, *e.g.*, *RecogniCorp v. Nintendo*, 855 F.3d 1322, 1324 (Fed. Cir. 2017) ("method for creating a composite image" found to be "directed to the abstract idea of encoding and decoding image data"); *Int'l Bus. Machines v. Zillow Grp.*, 50 F.4th 1371, 1380 (Fed. Cir. 2022) (claims for organization, arrangement, filtering, and display of sets of visual information were directed to the abstract idea of organizing and displaying visual information); *Coffelt v. NVIDIA*, 680 F. App'x 1010, 1011 (Fed. Cir. 2017) (claims involving analysis of image data were found to be directed to the abstract idea of calculating and comparing regions in space).

Finally, the claims' recitation of generic machine learning to carry out the abstract idea cannot save the claims. The Federal Circuit has recently held that "patents that do no more than claim the application of generic machine learning to new data environments, without disclosing improvements to the machine learning models to be applied, are patent ineligible under § 101." *See*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

11

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

*Recentive*, 134 F.4th at 1216 (claims, which used generic machine learning to generate schedules and network maps, were ineligible). Like the abstract claims in *Recentive*, the '272 claims merely recite the generic application of "machine learning" to image data, with no improvement to the machine learning models to be applied.

### b.    The claims are not directed to specific improvements to technical problems

The claims do not recite improvements to technology, but instead merely use result-based language to apply the abstract idea in a computer context using generic computer components, as further discussed for Step Two below. "[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology." *Credit Acceptance v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017); *see also Recentive,* 134 F.4th at 1216 (generic machine learning does not save claims from abstraction).

The '272 patent suggests it improves efficiency and quality. (*See* '272 patent at 2:32-38, 3:50-60, 4:35-47; *see also* FAC ¶¶ 26-28, 51 (alleging patent reduces time/costs while improving accuracy).) But improving efficiency and quality are just abstract ideas and address age-old problems not specific to computers: "[w]hile the claimed methods may speed up that organizational process by using a computer, they do not recite an improvement in any computing technology." *Zillow*, 50 F.4th at 1380; *see also Univ. of Fla. Rsch. Found. v. Gen. Elec.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019) (finding invalid claims that sought to automate pen-and-paper methodologies to conserve human resources and minimize errors); *Elec. Power Grp. v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users…—by itself does not transform the otherwise-abstract processes of information collection and analysis."). Furthermore, any supposed "efficiency" improvement is disconnected from the claim language and can be disregarded. *See*, *e.g.*, *Hawk Tech.*, 60 F.4th at 1357 (disregarding argument about goal of conserving bandwidth while preserving data, because the claims themselves did not disclose that); *Berkheimer v. HP*, 881 F.3d 1360, 1369-70 (Fed. Cir. 2018) (invalidating claims that did not recite the purported inventive concept of improving efficiency by reducing "redundancy"); *Free Stream*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

*Media v. Alphonso*, 996 F.3d 1355, 1364-65 (Fed. Cir. 2021) (a claim is directed to an abstract idea where there is nothing in the claims that demonstrate an improvement to computer functionality, even where the specification provides details on how to achieve a result).

The '272 patent also describes the claimed invention as improving machine learning. ('272 patent at 3:47-50.) However, the supposed "improvement" described is only the abstract process of generating images to use for training—in other words, providing supposedly improved (but still abstract) data to the generic machine learning algorithm. (*Id.; see also id.* at 6:66-7:3.) This is just "the application of generic machine learning to *new data environments*, without disclosing improvements to the machine learning models to be applied," which *Recentive* held not patent eligible. 134 F.4th at 1216 (emphasis added). The patent does not describe how the training is done nor does it describe any improved machine learning system; instead, it describes machine learning functionally (*see*, *e.g.*, '272 patent at 8:61-9:3, 36:37-42) and describes known machine learning models (*see*, *e.g.*, *id.* at 8:49-61). *Zillow*, 50 F.4th at 1378 (patent is abstract if it is "result-oriented, describing required functions ... without explaining how to accomplish any of the tasks."). The claims' mere recitation of using images as data for generic "machine learning systems" does not change the abstract nature of the claims. *Recentive*, 134 F.4th at 1212.

Because the claims cover age-old practices previously found abstract, and do not "improve the functioning of the computer itself," they are abstract. *See Alice*, 573 U.S. at 219, 225-26.

### 3.    *Alice* Step Two: the claims recite no inventive concept

The claims of the '272 patent recite no inventive concept. The abstract concept that the claims are directed to (image generation) and any improved results attributed to that abstract concept cannot serve as the inventive concept. *See BSG Tech. v. Buyseasons*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]"); *accord Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1150 (Fed. Cir. 2019); *Synopsys v. Mentor Graphics*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Claims are invalid where the "claim's only 'inventive concept' is the application of an abstract idea using conventional … techniques." *BSG Tech*, 899 F.3d at 1290-91.

Here, stripping away the abstract concept, all that remains are generic components and

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

concepts—such as a "processor," "database," "3D models," "computer graphics engine," "image projector," "virtual camera," "synthetic image," and "machine learning system"—that were well-understood, routine, and conventional by the time of the claimed invention. The '272 patent does not purport to have invented or improved any of these technologies. Processors and databases were unquestionably well-known by the time of the invention. Additionally, 3D models are non-inventive: they are "common geometric shapes and/or 3D renderings having the shape and dimensions of real world objects" and can be created using conventional, preexisting technology "by scanning a real world object with a 3D scanning device or illustrating an object of interest[] using a CAD software program." ('272 patent at 28:19-24.); *see also AI Visualize*, 97 F.4th at 1374-75 (finding ineligible claims involving 3D virtual views). As for graphics engines, the specification of the '272 patent confirms that graphics engines were conventional and well-known: "Virtual scenes may be assembled using a graphics rendering engine 128 (e.g., Blender or Unity)." ('272 patent at 15:31-32.) The claimed "image projector" is simply another processor for carrying out high-level functionality, described in the specification as "process[ing] image scenes from the image scene generator 124 to generate camera views rendered as synthetic images by the graphics rendering engine 128." (*Id.* at 18:2-5.) It's a black-box component to place virtual cameras in a scene and/or change positions of virtual cameras. (*Id.* at 18:11-14.) Meanwhile, the specification describes the "virtual cameras" as set up identical to *actual* cameras to mimic the functioning of real-world cameras, but does not itself purport to have invented any such virtual cameras. (*Id.* at 8:22-27; *see also id.* at 18:17-21.) This is not inventive. *See AI Visualize*, 97 F.4th at 1374-75 (finding ineligible claims involving virtual views). Finally, as explained above, the patent makes clear that the claimed "machine learning system" is not inventive; the patent describes already-known types of machine learning and algorithms or merely describes such systems in functional terms.

Viewing the claims as an ordered combination yields the same conclusion: the claims are abstract and non-inventive. The combination involves common-sense, conventional steps that flow from the abstract concept of image generation—e.g., receive a set of images and objects, select images and objects, and assemble them to make an image. AIIA's bare allegation in the FAC that

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

the claims "require unconventional combinations" (¶ 51) are unsupported, conclusory allegations that this Court need not accept. *See Int'l Bus. Machines v. Zillow Grp.*, No. 2022-1861, 2024 WL 89642, at *4 (Fed. Cir. Jan. 9, 2024) (citing *Zillow*, 50 F.4th 1371, 1379 (Fed. Cir. 2022)); *AI Visualize*, 97 F.4th at 1380; *CardioNet v. InfoBionic*, No. 2020-2123, 2021 WL 5024388, at *5 (Fed. Cir. Oct. 29, 2021).

Failing both steps of *Alice*, the claims of the '272 patent are patent ineligible.

### C.    The Claims of the '693 Patent Are Invalid Under § 101

The '693 patent is directed to unpatentable subject matter.

#### 1.    Claim 11 is representative

AIIA identifies claims 1 and 11 of the '693 patent in its FAC (¶ 46). The claims have overlapping limitations, where claim 1 focuses on recording stereoscopic video and embedding metadata and claim 11 focuses on displaying the recorded video and using the metadata for calibration. Claim 11 can serve as representative of both asserted claims, and of all unasserted claims (cls. 2-10, 12)—all but one of which are dependent and all of which include only minor variations or particularities that are likewise abstract and non-inventive. The below analysis thus begins with claim 11 but explains how no other claims substantively alter the analysis.

#### 2.    *Alice* Step One: the claims are directed to an abstract idea

The '693 patent is directed to an abstract idea.

##### a.    The claims are directed to collecting, storing, manipulating, and displaying information

The claims are directed to the abstract ideas of collecting, storing, manipulating, and displaying information. The claims describe systems for recording, storing, and displaying stereoscopic 3D video and involve embedding metadata into the video files and using that metadata during playback. (*See* FAC, Ex. B at cls. 1, 11.) Stereoscopic 3D imagery is an abstract concept— it is looking at an object from two slightly different angles to allow depth perception, exactly how human sight processes images from two eyes. (*See id.* at 1:24-25, 1:35-38, 4:9-11.) The claims recite various other non-inventive, generic particularities, such as generic and conventional camera components ("wherein the stereoscopic video capture device comprises two or more fish-eyed lens

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

15

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

digital cameras," cl. 11), metadata (which is just information) ("calibration metadata," cl. 1, and "metadata obtained from a sensor of the stereoscopic video capture device," cl. 11), and where to store the metadata ("by encoding the contemporaneous metadata feeds into the subtitles or closed captioning metadata fields of the video file format," claim 1). None of these limitations alter the heart of the claims, which is to collect, store, manipulate, and display information—and the heart of the claims is the proper focus at *Alice* Step One. *Ultramercial*, 772 F.3d at 714; *Elec. Power*, 830 F.3d at 1353; *Affinity Labs of Tex. v. DIRECTV*, 838 F.3d 1253, 1256-57 (Fed. Cir. 2016).

The Federal Circuit has repeatedly found patent-ineligible analogous claims directed to the abstract ideas of collecting, storing, manipulating, and/or displaying data. *See, e.g.*, *Mobile Acuity v. Blippar*, 110 F.4th 1280, 1292 (Fed. Cir. 2024) (finding abstract claims directed to "receiving information, associating information with images, comparing the images, and presenting information based on that comparison"); *Digitech Image Techs. v. Elecs. for Imaging*, 758 F.3d 1344, 1351 (Fed. Cir. 2014) (combining data set information (such as spatial stimuli) and "organizing this information into a new form" is not patent eligible); *accord Elec. Power*, 830 F.3d at 1353-54; *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367; *Intell. Ventures I v. Cap. One Fin.*, 850 F.3d 1332, 1341 (Fed. Cir. 2017); *Elec. Commc'n Techs. v. ShoppersChoice.com*, 958 F.3d 1178, 1182-83 (Fed. Cir. 2020); *SAP Am. v. InvestPic*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).

b.    **The claims are not directed to specific technical improvements, but use computers as tools to apply abstract ideas**

The '693 patent is not directed to specific improvements to technical problems. That the patents rely on computers does not save them from abstraction. The '693 patent does not claim to have invented stereoscopic imaging; the recited computerized system involves only generic computer components used as tools to apply the abstract ideas of collecting, storing, processing, and displaying information, as discussed further for Step Two. *See Finjan v. Blue Coat Sys.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018); *Univ. of Fla. Rsch. Found.*, 916 F.3d at 1367.

Instead, the '693 patent explains that it is addressed to systems and methods to "embed," "process," "decode," and "utilize" information generated by conventional cameras. ('693 patent at 2:3-12; *see also* FAC ¶ 22.) This is just storing, analyzing, and displaying data—which is all

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

abstract. *See RecogniCorp*, 855 F.3d at 1324 (finding ineligible claims "directed to the abstract idea of encoding and decoding image data"); *Digitech Image Techs.*, 758 F.3d at 1348 (finding claims ineligible despite argument that the claims were an integral part of the design and calibration of a processor device within a digital image processing system).

Moreover, "a claim that merely describes an 'effect or result dissociated from any method by which [it] is accomplished'" is typically "not directed to patent-eligible subject matter." *Apple v. Ameranth*, 842 F.3d 1229, 1244 (Fed. Cir. 2016). Here, the claims merely recite desired functional results with no explanation of how to accomplish these results. For example, the claims recite functional limitations to "obtain the stereoscopic video feed from the computer store" (cls. 1, 11), "obtain" (cl. 1) and "parse" (cl. 11) "the plurality of contemporaneous metadata feeds," "embed[]… the stereoscopic video feed with the plurality of contemporaneous metadata feeds" (cl. 1), "write" the stereoscopic video feed to a video file (cl. 1), "encod[e] the contemporaneous metadata feeds into the subtitles" (cl. 1), and "calibrate the stereoscopic video feed for display" (cl. 11)—all without any specific way to accomplish the functions. This is "result-based functional language" that "does not sufficiently describe how to achieve these results in a non-abstract way." *Two-Way Media v. Comcast Cable Comm'ns*, 874 F.3d 1329, 1337 (Fed. Cir. 2017); *see also Interval Licensing v. AOL*, 896 F.3d 1335, 1343 (Fed. Cir. 2018). Under binding Federal Circuit precedent, such results-oriented claims "describing required functions (presenting, receiving, selecting, synchronizing), without explaining how to accomplish any of the tasks" are abstract. *Zillow*, 50 F.4th at 1378.

### 3. *Alice* Step Two: the claims recite no inventive concept

There is nothing to the claims of the '693 patent beyond the abstract idea and generic, conventional components such as "computerized system," "stereoscopic [camera/video capture] device," "computer store," "data," "metadata," "computer processor," "video file," "fish-eyed lens digital cameras," and "computing device." There is no inventive hardware or algorithms recited in the claims. The specification confirms that the recited technology was conventional at the time ('693 filed in **2016**, claiming priority from provisional filed in **2015**). The patent does not claim to have invented stereoscopic 3D video cameras, but is instead using stereoscopic 3D video cameras

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

as a generic and well-known tool. For example, the "Description of the Related Art" describes a prior art "stereoscopic 3D video camera" that consists of two or more image sensors each with one lens. ('693 patent at 1:24-25.) The patent explains that known stereoscopic camera systems include basic elements such as digital image sensors, fish-eye lenses, a laptop or other computing device, digital storage, USB cables, etc., and can be "coded in various processing stages." (*Id.* at 1:25-28, 3:62-64, 4:11-12, 4:30-46.) And the claimed "computing devices" used for video playback are just conventional devices, such as mobile phones or existing virtual reality headsets (e.g., Oculus Rift, Google Cardboard). (*Id.* at 1:41-44, 5:63-65, 6:38-41, 8:48-50.) The patent describes common formats for storing video and audio files and other data. (*Id.* at 4:6-8.) Although the specification vaguely points to "specialized hardware for carrying out some or all aspects of the processes" (*id.* at 6:9-11), none is described, and most critically, nowhere do the _claims_ describe any such specialized hardware. Generic components and concepts cannot save the claims under Section 101. *Yu v. Apple*, 1 F.4th 1040, 1042-43 (Fed. Cir. 2021) (ineligible claims included "improved digital camera," "image sensors," "digital image processor," "analog-to-digital converting circuitry").

Although the patent explains that the claimed methods "can be performed in any order (e.g., including using means for achieving the various operations)" ('693 patent at 9:44-46), viewing the components in the ordered combinations laid out in Figures 8-11 leads to the same conclusion: there is nothing inventive about this patent. The combination involves common-sense, conventional steps such as "record video feed from multiple stereoscopic video image sensors 802[,] obtain embedding calibration… or other metadata from video capture device… 804[, and] in the video capture device, aggregate the output of steps 802 and 804 in realtime 806." (*Id.* at Fig. 8.) All this boils down to is collecting and aggregating information. The same can be said of the other figures, which involve routine and abstract functions like: obtain digital video feeds, combine the feeds into a single feed, obtain other metadata, store calibration information in a single digital feed, stream and/or store outputs. (*Id.* at Fig. 9.) These high-level steps do not save the claims from abstraction. *See In re Killian*, 45 F.4th 1373, 1379-80 (Fed. Cir. 2022) (claims directed to abstract ideas such as collection of information on a generic computer network operating in its normal, expected manner are abstract). Thus, the '693 patent fails *Alice* Step Two.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

18

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

***

In short, the '272 and '693 patents do not claim patent-eligible subject matter under Section 101. For this independent reason, AIIA's infringement claims as to those patents should be dismissed with prejudice.

## IV.    CONCLUSION

Elementary respectfully requests that the case be dismissed in its entirety. Given the paucity of support for AIIA's allegations and AIIA's numerous misrepresentations, even after amendment, all claims should be dismissed with prejudice. At a minimum, Counts II and III alleging infringement of the '693 and '272 patents should be dismissed with prejudice, as those patents are directed to ineligible subject matter.

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Elementary Robotics, Inc., certifies that this brief contains 6,989 words, which complies with the word limit of L.R. 11-6.1.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

19

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

Dated: December 4, 2025

Respectfully submitted,

COOLEY LLP

By:  */s/ Alexandra Leeper*
       Alexandra Leeper

REUBEN H. CHEN (228725)
(rchen@cooley.com)
ALEXANDRA DUNWORTH LEEPER
(307310) (aleeper@cooley.com)
ANGELA R. MADRIGAL (346530)
(amadrigal@cooley.com)
3175 Hanover Street
Palo Alto, California 94304-1130
Telephone:        (650) 843-5000
 Facsimile:        (650) 849-7400

*Attorneys for Defendant*
*ELEMENTARY ROBOTICS, INC.*

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 4, 2025, I caused a copy of the foregoing document to be filed with the Clerk of the Court using CM/ECF which will send notification of such filing to all counsel of record.

*/s/ Alexandra Leeper*

Alexandra Leeper

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

21

DEFENDANT'S MPA ISO
MOTION TO DISMISS
CASE NO. 2:25-CV-08297-HDV-E