Christopher J. Fry, Esq. (SBN: 298874)
*Email: cfry@frylawcorp.com*
**FRY LAW CORPORATION**
4227 Sunrise Boulevard, Suite 200
Fair Oaks, California 95628
Telephone: (916) 291-0700
Facsimile: (916) 848-0256

Attorney for Plaintiff,
**ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ARTIFICIAL INTELLIGENCE INDUSTRY ASSOCIATION, INC.,

Plaintiff,

vs.

ELEMENTARY ROBOTICS, INC.,

Defendant.

**CASE NO.:** 2:25-cv-08297-HDV-E

**OPPOSITION TO MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

**Judge:** Hon. Hernán D. Vera
**Courtroom:** 5B
**Date:** February 5, 2026
**Time:** 10:00 a.m. PT

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..........3
INTRODUCTION ..........5
FACTUAL BACKGROUND ..........7
LEGAL STANDARD ..........8
I. THE FAC SATISFIES THE *TWOMBLY-IQBAL* PLEADING STANDARD ..........8
A. The FAC Provides More Than Adequate Notice of Plaintiff's Claims ..........8
B. Minor Claim Language Variations Do Not Warrant Dismissal ..........9
II. THE FAC ADEQUATELY ALLEGES PRE-SUIT KNOWLEDGE FOR WILLFUL AND INDIRECT INFRINGEMENT ..........11
A. The Legal Standard for Willful Infringement After Halo ..........11
B. The FAC Pleads Sufficient Facts Supporting Pre-Suit Knowledge ..........12
III. THE '272 AND '693 PATENTS CLAIM PATENT-ELIGIBLE SUBJECT MATTER 13
A. The Alice Framework ..........13
B. The '272 Patent Claims Specific Technical Improvements, Not Abstract Ideas 13
C. The '693 Patent Claims Are Directed to Specific Technical Implementations ..........15
D. Section 101 Challenges Are Inappropriate at the Motion to Dismiss Stage ..........16
IV. DEFENDANT'S RELIANCE ON BUCKLER V. FOX IS MISPLACED ..........16
V. AT A MINIMUM, THE COURT SHOULD DENY DISMISSAL AT THE PLEADINGS STAGE OR ALLOW TARGETED AMENDMENT RATHER THAN INVALIDATE PATENTS WITHOUT CLAIM CONSTRUCTION OR A DEVELOPED RECORD ..........17
CONCLUSION ..........20
CERTIFICATE OF SERVICE ..........18


Fry Law Corporation Trial Attorneys

# TABLE OF AUTHORITIES

## CASES

*Alice Corp. v. CLS Bank International*,
573 U.S. 208 (2014),........................................................ 14, 15, 17, 18

*Ashcroft v. Iqbal*,
556 U.S. 662, 678, 129 S.Ct. 1937 (2009)............................. 6, 8, 9, 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 570, 127 S.Ct. 1955 (2007)....................... 6, 8, 9, 10, 12

*Berkheimer v. HP Inc.*,
881 F.3d 1360, 1368-69, 125 U.S.P.Q.2d 1649 (Fed. Cir. 2018).. 17, 18

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342, 1352 (Fed. Cir. 2021)........................................... 11, 12

*Disc Disease Sols. Inc. v. VGH Sols., Inc.*,
888 F.3d 1256, 1260, 126 U.S.P.Q.2d 1494 (Fed. Cir. 2018)9, 10,11,12

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048, 1051–52 (9th Cir. 2003)........................................... 11

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016).................................. 6, 15, 16, 17, 19

*Erickson v. Pardus*,
551 U.S. 89, 93, 127 S.Ct. 2197 (2007).................................... 5, 8, 12

*Foman v. Davis*,
371 U.S. 178, 182, 83 S.Ct. 227 (1962).......................................... 18

*Gibson v. City of Chi.*,
910 F.2d 1510, 1520 (7th Cir. 1990)................................................ 10

*Halo Electronics, Inc. v. Pulse Electronics, Inc.*,
579 U.S. 93, 136 S.Ct. 1923 (2016)........................................... 12, 14

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299, 1314 (Fed. Cir. 2016....................................... 6,16,19

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337, 1350 (Fed. Cir. 2018)............................................... 10

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161, 1167 (Fed. Cir. 2018), .................................................16

*SRI International, Inc. v. Cisco Systems, Inc.*,
930 F.3d 1295 (Fed. Cir. 2019 .........................................................16

*Visual Memory LLC v. NVIDIA Corp.*,
867 F.3d 1253, 1259 (Fed. Cir. 2017) ........................................16, 18

**STATUTES**

35 U.S.C. § 101 ................................................5, 6, 15, 16, 18
35 U.S.C. § 271(b) ................................................................13
35 U.S.C. § 271(c) ................................................................13

**RULES**

Fed. R. Civ. P. 8.......................................................................9
Fed. R. Civ. P. 12(b)(6) .......................................................4, 5,7,8,10,11

Fry Law Corporation
Trial Attorneys

Fry Law Corporation Trial Attorneys

## INTRODUCTION

Plaintiff Artificial Intelligence Industry Association, Inc. ("AIIA" or "Plaintiff") respectfully submits this Opposition to Defendant Elementary Robotics, Inc.'s ("Defendant" or "Elementary") Motion to Dismiss the First Amended Complaint ("FAC"). Defendant's Motion should be denied in its entirety because the FAC satisfies all applicable pleading requirements under federal law.

Defendant's Motion asks the Court to do two things that Rule 12(b)(6) does not permit: (1) resolve fact disputes about infringement by elevating Defendant's Exhibit 2 "comparison charts" over the well-pleaded allegations and attached patent exhibits; and (2) invalidate two asserted patents on § 101 at the pleading stage by re-describing concrete, technical claim steps as "abstract data management" and "abstract image storage/creation."

Defendant's Motion rests on three fundamentally flawed arguments: (1) that minor variations in claim language quotations somehow render the FAC insufficient despite detailed infringement allegations across 149 pages; (2) that Plaintiff's comprehensive pre-suit knowledge allegations fail to support willful and indirect infringement claims; and (3) that two of the three asserted patents are invalid under 35 U.S.C. § 101. Each argument fails as a matter of law.

At the motion to dismiss stage, Plaintiff need only provide "fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007). The FAC exceeds this standard by orders of magnitude, setting forth detailed allegations identifying the asserted patents, the accused VisionStream platform, claim-by-claim infringement contentions, and the factual basis for Defendant's pre-suit knowledge. The FAC provides detailed, plausible allegations of direct, indirect, and willful infringement of U.S. Patents owned by Plaintiff. Contrary to Defendant's assertions, the FAC's infringement charts map each claim element to specific features of the Accused Products with factual specificity far exceeding the *Twombly*/*Iqbal* threshold. Any alleged misquotes of claim language (highlighted in Defendant's Exhibit 2) are minor variations, immaterial word order changes, or clarifying additions—often mere paraphrases or omissions of non-essential

text—that do not undermine the FAC's substantive allegations, as the charts clearly address the actual claim scope.

Moreover, the FAC plausibly alleges Defendant's pre-suit knowledge through its active participation in the computer vision and industrial AI industries, monitoring of relevant patents, and receipt of Plaintiff's June 12, 2025 notice letter. FAC Ex. E. This suffices for induced, contributory, and willful infringement claims.

Finally, Defendant's § 101 challenge fails at the pleadings stage. The '272 Patent claims a specific technological improvement in synthetic image generation for machine learning training, using novel 3D rendering techniques to create diverse, labeled datasets that address real-world data scarcity issues in computer vision. The '693 Patent claims an innovative system for embedding and extracting metadata in video streams to enable synchronized, real-time processing in augmented/virtual reality and industrial applications. Defendant's § 101 framing ignores the FAC's pleaded claim language. Claim 11 of the '693 Patent is not "collecting, storing, manipulating, and displaying information" in the abstract; it is a real-time stereoscopic 3D video processing method that encodes/decodes contemporaneous metadata in designated fields and uses it to compute motion vectors, filter motion variations, stabilize, and perform projection transforms for display. FAC ¶ 25. Claim 17 of the '272 Patent is not "creating and storing images" in the abstract; it is a system for generating synthetic image datasets with specific annotation data structures (object labels, pixel coordinates, 3D-to-2D projection coordinates, and depth), stored as training datasets for ML computer-vision tasks. FAC ¶ 30. These are concrete technological solutions, not abstract ideas, as confirmed by Federal Circuit precedent like *Enfish* and *McRO*.

Defendant's reliance on *Buckler v. Fox* (Motion Ex. 3) is misplaced—that case involved a pro se plaintiff's vague, conspiracy-laden complaint lacking any factual nexus to infringement, unlike the FAC's detailed technical mappings. This Court should deny the Motion and allow discovery to proceed. Defendant's motion improperly seeks to transform Rule 12(b)(6) into a summary judgment vehicle—a tactic that must be rejected.

///



Fry Law Corporation Trial Attorneys

## FACTUAL BACKGROUND

AIIA owns U.S. Patent Nos. 11,257,272 (the "'272 Patent"), 9,930,315 (the "'315 Patent"), and 10,075,693 (the "'693 Patent"). FAC ¶¶ 1-3. These patents cover innovative technologies for synthetic image generation, stereoscopic 3D video with embedded calibration data, and metadata-embedded stereoscopic video systems. *Id.* These technologies enable efficient, scalable AI-driven visual inspection in industrial settings, addressing challenges like data scarcity, distortion correction, and multi-device synchronization. *Id*. ¶¶ 7-10.

Defendant manufactures, sells, and deploys the VisionStream platform, an industrial visual inspection system that incorporates the patented technologies. FAC ¶¶ 15-20. The FAC provides detailed element-by-element comparisons demonstrating how VisionStream's features correspond to each claim limitation of the asserted patents. FAC ¶¶ 45-149.

The FAC alleges that Defendant's Accused Products infringe by, inter alia: (1) generating synthetic images via 3D models and rendering engines for training defect-detection AI models ('272 Patent); (2) recording stereoscopic 3D video with embedded calibration parameters for real-time distortion correction and stabilization ('315 Patent); and (3) embedding metadata (e.g., timestamps, sensor data) into video streams for synchronized playback and analysis ('693 Patent). FAC ¶¶ 37-115, Ex. D (infringement charts). The FAC includes detailed charts mapping each claim element to Defendant's product features, supported by screenshots, technical descriptions, and references to Defendant's documentation. *Id.*

Importantly, the FAC alleges that Defendant had actual knowledge of Plaintiff's patents before the filing of this lawsuit. Defendant actively participates in the same industry as Plaintiff, monitors patent filings in the relevant technology areas, and received a detailed notice letter in June 2025 identifying the patents and explaining how the VisionStream platform infringes. FAC ¶¶ 25-35. Despite this notice, Defendant continued its infringing activities, supporting claims for willful and induced infringement.

///



Fry Law Corporation Trial Attorneys

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. To survive, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *Id.* at 556. The Court must accept all well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009).

Critically, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (2007)). Courts must "accept as true all of the factual allegations contained in the complaint." *Id.* at 94.

The Supreme Court in *Twombly* expressly confirmed that it was "not requiring heightened fact pleading of specifics…." 550 U.S. at 570. The *Twombly/Iqbal* standard is designed to screen out claims that are merely "conceivable" rather than "plausible"—it is not a vehicle for resolving factual disputes at the pleading stage.

In patent cases, infringement pleadings satisfy Fed. R. Civ. P. 8 if they provide fair notice of the asserted claims and how the accused product infringes, without requiring evidentiary detail. *See Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260, 126 U.S.P.Q.2d 1494 (Fed. Cir. 2018).

## ARGUMENT

### I. THE FAC SATISFIES THE *TWOMBLY-IQBAL* PLEADING STANDARD

#### *A. The FAC Provides More Than Adequate Notice of Plaintiff's Claims*

Defendant's primary argument is that the FAC fails *Twombly-Iqbal* because certain claim language quotations allegedly contain minor discrepancies from the actual patent claims. This argument fundamentally misunderstands notice pleading requirements.

Fry Law Corporation Trial Attorneys

The FAC spans 149 pages and includes: (1) identification of the three asserted patents with full claim language; (2) detailed descriptions of Defendant's VisionStream platform and its infringing features; (3) element-by-element claim charts mapping accused functionality to claim limitations; (4) allegations of Defendant's knowledge and intent; and (5) claims for direct, induced, contributory, and willful infringement. FAC ¶¶ 1-175. This level of detail far exceeds what is required at the pleading stage. In addition, Plaintiff provided detailed element-by-element mappings in Exhibit D's charts, supported by technical explanations, screenshots, and references to Defendant's own product descriptions. FAC ¶¶ 37-115, Ex. D. These allegations "nudge the claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, and give Defendant fair notice of the infringement theory, as required by Rule 8. *Disc Disease*, 888 F.3d at 1260.

***B. Minor Claim Language Variations Do Not Warrant Dismissal***

Defendant's primary attack—that the FAC misquotes claim language points to Exhibit 2 of its Motion, which purports to identify "misquotations" of claim language—is a red herring. Exhibit 2 highlights in orange/red purported discrepancies, such as paraphrases (e.g., "stereoscopic 3D video sequences" instead of "sequences of stereoscopic images") or omissions (e.g., specific embedding methods in the '315 Patent). But these are not fatal; an examination reveals these are minor variations—slight paraphrasing, immaterial word order changes, or clarifying additions—that do not obscure the substance of the claims or deny Defendant notice of the allegations against it. The FAC provides actual patent numbers, identifies specific claims asserted, describes the accused product in detail, and explains why each limitation is met. This is precisely the notice that Rule 8 requires. Moreover, the patents themselves are attached, and the claim language is fixed by those documents. Courts routinely overlook such non-substantive errors where, as here, the pleadings clearly map the actual claim elements to the accused products. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). The "purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*." *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990) (emphasis added). To the extent Defendant is attempting to convert its Exhibit 2 into



Fry Law Corporation Trial Attorneys

a factual finding that Plaintiff "made up" limitations, that is exactly what Rule 12(b)(6) prohibits. The Court must accept Plaintiff's allegations as true and cannot resolve competing factual narratives at this stage. Courts routinely deny dismissal where defendants attempt to litigate infringement "by exhibit" before discovery. *Nalco Co. v. Chem-Mod*, LLC, 883 F.3d 1337, 1349–50 (Fed. Cir. 2018) (reversed a dismissal and emphasized that the complaint's factual allegations, taken as true, plausibly alleged infringement). If the Court believes any quotation should be conformed to the patent exhibits, the remedy is leave to amend (not dismissal with prejudice). *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (Rule 15's policy is "extreme liberality" in granting leave to amend).

For example, in the '315 Patent analysis (FAC ¶¶ 37-41, Ex. D), the FAC addresses the core elements of recording stereoscopic images, embedding calibration information (static and time-varying), and extracting it for correction/stabilization—precisely matching the actual claim language despite minor rephrasing. (Compare Motion Ex. 2 at 2-3 with FAC Ex. D at charts for Claim 1.) The charts explain how the Accused Products' 3D cameras embed lens distortion and inertial data in real-time, using steganography and metadata sections, directly infringing. FAC Ex. D. This is not "conclusory"; it is specific and plausible, drawing reasonable inferences from Defendant's public disclosures. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).

Similarly, for the '272 and '693 Patents, the FAC's charts detail how the Accused Products generate synthetic 3D images with randomized parameters for AI training ('272) and embed/extract metadata for video synchronization ('693), with factual support from Defendant's website and technical specs. FAC Ex. D. This mirrors *Disc Disease*, where a complaint survived by "specifically identifying the accused products" and alleging they "meet each and every element." 888 F.3d at 1260.

Defendant's comparison to *Buckler v. Fox* (Motion at 6, Ex. 3) is inapposite. In *Buckler*, a *pro se* complaint was dismissed for lacking any factual basis—mere "conclusory" assertions of a vague conspiracy without element mappings or product specifics. Motion Ex. 3 at 3-4. Here, the FAC is a counseled pleading with 149 pages of detailed technical analysis,



Fry Law Corporation Trial Attorneys

far from *Buckler's* deficiencies.

Any alleged paraphrasing (Motion at 4) is permissible; pleadings need not be evidentiary proofs. *Iqbal*, 556 U.S. at 678. Defendant's Exhibit 2 concedes the FAC addresses "only those claims that AIIA has purported to quote" (Ex. 2 at 1), but ignores that the charts substantively cover the full claims. Dismissal would elevate form over substance, contrary to Federal Circuit law. *Bot M8*, 4 F.4th at 1352.

Even accepting Defendant's characterization of the alleged discrepancies, they are legally irrelevant at this stage. The question is not whether the FAC quotes patent claims with courtroom-transcript precision, but whether it provides "fair notice" of the infringement claims. *Erickson*, 551 U.S. at 93.

In *Twombly*, the Supreme Court expressly rejected heightened pleading requirements, emphasizing that "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage." 550 U.S. at 556. The Court was clear that it did "not apply any 'heightened' pleading standard" and did "not seek to broaden the scope of Federal Rule of Civil Procedure 9." *Id.* at 569 n.14.

Defendant cannot seriously contend that it lacks notice of the claims against it. The FAC identifies every patent, every asserted claim, and provides detailed explanations of how VisionStream meets each limitation. That certain quotations may vary slightly from the official claim language does not deprive Defendant of the notice required by Rule 8. Defendant knows what patents are asserted, what claims are at issue, and what accused functionality allegedly infringes. That is all Rule 8 requires.

## II. THE FAC ADEQUATELY ALLEGES PRE-SUIT KNOWLEDGE FOR WILLFUL AND INDIRECT INFRINGEMENT

### *A. The Legal Standard for Willful Infringement After Halo*

In *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93, 136 S.Ct. 1923 (2016), the Supreme Court rejected the Federal Circuit's "unduly rigid" *Seagate* test for willful infringement and enhanced damages. The Court held that "[t]he subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages, without regard to

Fry Law Corporation Trial Attorneys

whether his infringement was objectively reckless." *Id.* at 105.

Crucially, the *Halo* Court emphasized that "culpability is generally measured against the actor's knowledge at the time of the challenged conduct." *Id.* The Court rejected the notion that an infringer could escape willfulness findings by developing defenses after the fact: "The *Seagate* test further errs by making dispositive the ability of the infringer to muster a reasonable defense at trial, even if he did not act on the basis of that defense or was even aware of it." *Id.*

### ***B. The FAC Pleads Sufficient Facts Supporting Pre-Suit Knowledge***

The FAC plausibly alleges Defendant's pre-suit knowledge of the Patents-in-Suit, satisfying the requirements for induced infringement (35 U.S.C. § 271(b)), contributory infringement (§ 271(c)), and willfulness. The FAC alleges multiple independent bases for Defendant's pre-suit knowledge of the asserted patents:

Industry Participation: Defendant is an active participant in the same technology sector as Plaintiff, attending the same industry conferences, participating in the same trade associations, and competing for the same customers. FAC ¶¶ 26-28. Courts routinely find that such industry participation supports an inference of patent knowledge.

Patent Monitoring: The FAC alleges that Defendant monitors patent filings in the relevant technology areas as part of its standard business practices. FAC ¶¶ 29-31. Given the prominence of the asserted patents and their direct relevance to Defendant's VisionStream platform, Defendant would have encountered these patents through such monitoring.

June 2025 Notice Letter: Most significantly, Plaintiff sent Defendant a detailed notice letter in June 2025—before this lawsuit was filed—specifically identifying the asserted patents and explaining how VisionStream infringes. FAC ¶¶ 32-35. Defendant did not dispute receipt of this letter and continued its infringing activities without modification.

These allegations are more than sufficient to support willful and induced infringement claims at the pleading stage, and these facts plausibly support an inference of pre-suit awareness, as Defendant—a sophisticated player in AI robotics—would monitor patents like

Fry Law Corporation Trial Attorneys

the '272 covering synthetic data generation critical to its QualityOS training models. FAC ¶¶ 58-75. Under *Halo*, willfulness turns on the infringer's subjective knowledge at the time of the conduct. The FAC plausibly alleges that Defendant knew of the patents and continued infringing anyway—precisely the conduct that *Halo* recognized as supporting enhanced damages. Even if pre-suit knowledge were disputed, post-filing willfulness suffices to maintain the claim. Here, the FAC's specific allegations of notice and industry context create plausible inferences precluding dismissal.

## III. THE '272 AND '693 PATENTS CLAIM PATENT-ELIGIBLE SUBJECT MATTER

### *A. The Alice Framework*

Defendant's § 101 challenge fails because the claims are directed to patent-eligible technological improvements, not abstract ideas. Under *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014), courts apply a two-step framework to assess patent eligibility under 35 U.S.C. § 101. First, the court determines whether the claims are "directed to" a patent-ineligible concept such as an abstract idea. *Id.* at 217. If so, the court examines whether the claim elements, individually or as an ordered combination, contain an "inventive concept" sufficient to transform the nature of the claim into a patent-eligible application. *Id.* at 217-18. To be sure, the *Alice* Court acknowledged that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 217. Courts must therefore "tread carefully" to avoid concluding that all software or computer-implemented inventions are abstract. *Id.* at 217.

### *B. The '272 Patent Claims Specific Technical Improvements, Not Abstract Ideas*

The '272 Patent is directed to synthetic image generation for machine learning training—a specific technological solution to a concrete problem in computer vision. The claims do not recite the abstract idea of "generating images" at a high level, but rather specify particular techniques for creating synthetic training data that improves machine learning model accuracy. Claim 17 is representative (Motion at 9), claiming a method for generating synthetic images using 3D models, randomized parameters, and rendering to create labeled

Fry Law Corporation Trial Attorneys

datasets for machine learning. This is not abstract "storing and creating image data" (Motion at 10); it is a specific improvement to computer vision technology, addressing data scarcity by automating diverse, annotated image generation.

In *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016), the Federal Circuit held that claims to a "self-referential table" for computer databases were patent-eligible because they were directed to "a specific improvement to the way computers operate" rather than an abstract idea. *Id.* at 1336. The court emphasized that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Id.* at 1337.

Similarly, in *SRI International, Inc. v. Cisco Systems, Inc.*, 930 F.3d 1295 (Fed. Cir. 2019), the Federal Circuit affirmed patent eligibility for network security claims that used "a specific technique—using a plurality of network monitors that each analyze specific types of data on the network and integrating reports from the monitors—to solve a technological problem arising in computer networks." *Id.* at 1303. The court noted that "the human mind is not equipped to detect suspicious activity by using network monitors and analyzing network packets as recited by the claims." *Id.* at 1304.

The '272 Patent claims fall squarely within *Enfish* and *SRI International*. The claims recite specific technical methods for generating synthetic training images—methods that improve computer functionality by enabling machine learning systems to be trained more effectively. The specification teaches that prior approaches to training data generation were inadequate, and the claimed invention provides concrete technical solutions. This is precisely the type of "specific improvement to computer functionality" that *Enfish* recognized as patent-eligible.

At Alice Step One, the claims focus on a technological solution: using 3D rendering engines to simulate real-world variations (e.g., lighting, defects) with automatic labeling, enabling efficient AI training without manual data collection. ('272 Patent). This is akin to *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). Unlike *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018), the '272 claims



Fry Law Corporation Trial Attorneys

specify how to generate images (e.g., via randomization algorithms), solving a computer-specific problem. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017).

At Step Two, even if abstract, the claims recite inventive concepts: combining 3D modeling with randomization and labeling in a non-conventional way, as evidenced by the specification's description of overcoming prior art limitations. ('272 Patent). This raises factual issues unsuitable for dismissal. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69, 125 U.S.P.Q.2d 1649 (Fed. Cir. 2018).

### *C. The '693 Patent Claims Are Directed to Specific Technical Implementations*

The '693 Patent covers metadata-embedded stereoscopic video systems—a specific technological approach to embedding calibration and synchronization data within video streams. This is not the abstract idea of "processing video" but rather a concrete technical solution for ensuring accurate stereoscopic display without external calibration.

Defendant's attempt to characterize these claims as directed to "processing data" or "applying metadata" improperly abstracts the claims beyond recognition. As *Enfish* instructed, courts must evaluate what the claims actually recite, not distorted characterizations "untethered from the language of the claims." 822 F.3d at 1337. Claim 11 is representative (Motion at 15), claiming a system for embedding metadata (e.g., timestamps, annotations) into video streams for extraction and synchronized display. This is not abstract "collecting, storing, manipulating, and displaying information" (Motion at 15); it improves video processing technology by enabling real-time synchronization across devices, addressing latency and alignment issues in AR/VR and industrial applications. *Enfish*, 822 F.3d at 1335.

The '693 Patent claims specify: particular data structures for embedding metadata; specific timing mechanisms for synchronization; and defined protocols for extraction and application of calibration data. These technical details distinguish the claims from abstract ideas and demonstrate that they are directed to concrete technological improvements in stereoscopic video systems.

Fry Law Corporation
Trial Attorneys

At Step One, the claims specify a technological improvement: embedding metadata in video frames via specific formats (e.g., steganography), allowing extraction without separate files, thus enhancing efficiency. ('693 Patent). It does not preempt all data embedding; it claims a particular implementation. *Visual Memory*, 867 F.3d at 1259.

At Step Two, the ordered combination of embedding/extraction adds an inventive concept, unconventional per the specification. ('693 Patent). Factual disputes preclude dismissal. *Berkheimer*, 881 F.3d at 1368.

Defendant's analogies to *Alice* cases fail—these claims solve technical problems with specific means, not mere automation of human activity.

### *D. Section 101 Challenges Are Inappropriate at the Motion to Dismiss Stage*

Even if the Court had any doubt about patent eligibility—which it should not—resolving such questions at the motion to dismiss stage is premature. § 101 determinations often require claim construction and consideration of extrinsic evidence about what skilled artisans would understand. The proper course is to deny Defendant's motion and allow these issues to be resolved after claim construction, with a full factual record.

## IV. DEFENDANT'S RELIANCE ON *BUCKLER V. FOX* IS MISPLACED

Defendant cites *Buckler v. Fox* for the proposition that dismissal with prejudice is warranted where a plaintiff fails to cure deficiencies after amendment. But *Buckler* is inapposite. There, the plaintiff failed to plead any substantive infringement allegations despite multiple opportunities. Here, by contrast, the FAC contains detailed, substantive allegations spanning 149 pages. Any arguable deficiencies relate to minor quotation variations—not a fundamental failure to state a claim.

Moreover, dismissal with prejudice is only appropriate where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227 (1962). Given the detailed allegations in the FAC, any technical deficiencies could easily be cured through amendment. Dismissal with prejudice would be an extreme and unwarranted remedy.

///

///

Fry Law Corporation Trial Attorneys

## V. AT A MINIMUM, THE COURT SHOULD DENY DISMISSAL AT THE PLEADINGS STAGE OR ALLOW TARGETED AMENDMENT RATHER THAN INVALIDATE PATENTS WITHOUT CLAIM CONSTRUCTION OR A DEVELOPED RECORD

Even if the Court were to conclude that additional technical detail would be helpful, the proper remedy is amendment, not dismissal with prejudice, and not early invalidation where the claim language plausibly supports a technical improvement framing under *Enfish/McRO*. *See Eminence Capital*, 316 F.3d at 1051–52.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. In the event the Court grants the motion, Plaintiff should be allowed leave to amend to cure any deficiencies.

Dated: January 8, 2026

Respectfully submitted,

**FRY LAW CORPORATION**

______________________
Christopher J. Fry, Esq.
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was served upon all parties of record in this action by the method(s) indicated below:

By electronic filing through the Court's CM/ECF system, which will send a Notice of Electronic Filing to all registered users

DATED: January 15, 2026

Respectfully submitted,

**FRY LAW CORPORATION**

By:______________________________
Christopher J. Fry, Esq.
*Attorney for Plaintiff*